IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. |
| ) | |
| REPUBLIC SERVICES, INC. and BFI WASTE ) | |
| SYSTEMS OF NORTH AMERICA, LLC, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Indian Harbor Insurance Company ("Indian Harbor"), by and through its attorneys and for its Complaint against Defendants, Republic Services, Inc. ("Republic") and BFI Waste Systems of North America, LLC ("BFI"), alleges the following:

## NATURE OF THE CASE

1. Indian Harbor seeks a declaration, pursuant to 28 U.S.C. §§ 2201 and 2202, that it has no duty to indemnify Defendants for certain costs and expenses incurred in connection with the Missouri City Landfill, located in Liberty, Missouri.

## PARTIES

2. Indian Harbor is a North Dakota corporation with its principal place of business in Connecticut.

3. Republic is a Delaware corporation with its principal place of business in Arizona.

4. Defendant BFI is a Delaware limited liability company with its principal place of business in Arizona. BFI's sole member is Browning-Ferris Industries, LLC, a Delaware limited

liability company with its principal place of business in Arizona. The sole member of Browning-Ferris Industries, LLC is Allied Waste North America, Inc., a Delaware corporation with its principal place of business in Arizona. Allied Waste North America, Inc. is owned by Allied Waste Industries, Inc., which is owned by Republic.

5. Upon information and belief, BFI is the sole owner of the Missouri City Landfill, which is located in Liberty, Clay County, Missouri.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. An actual controversy exists between Indian Harbor and Defendants regarding whether Indian Harbor has any obligation under Indian Harbor Policy No. PEC002351502 to indemnify Defendants for certain costs and expenses incurred in connection with the Missouri City Landfill. Specifically, Indian Harbor seeks a declaration under 28 U.S.C. §§ 2201 and 2202 that it has no duty to indemnify Defendants for these costs and expenses.

8. Pursuant to 28 U.S.C. § 1391(a)(2), proper venue for this action is the United States District Court for the District of Western Missouri, Western Division, because a substantial part of the events complained of occurred in Clay County, which is within this District and Division.

## BACKGROUND

### The DNAPL Issues

9. The Missouri City Landfill (also referred to as "the Landfill") is a closed municipal solid waste landfill. The Landfill, which occupies approximately 90 acres of land, operated from November 1972 to September 1983.

10. In December 1984, a closure plan for the Landfill dated April 23, 1984 was approved by the United States Environmental Protection Agency and the Missouri Department of Natural Resources (the "MDNR"). The closure plan provided for a groundwater interceptor trench and sump system to intercept and collect groundwater flowing through the surface soils, Winterset Limestone and Stark Shale.

11. The post-closure plan was modified in August 1986. Upon information and belief, part of the modifications in 1986 included an extension of the interceptor trench necessitated by the flow of groundwater which was bypassing the southern end of the trench.

12. The post-closure plan was modified again in July 1996. The modifications included the addition of operation and maintenance details for the seep collection trench completed in April 1996. The seep collection trench was constructed to mitigate potential impacts to on-site and off-site surface water.

13. In a letter dated June 23, 2010, Republic informed Indian Harbor that it had received a Notice of Violation from the MDNR dated June 3, 2010. The NOV alleged that BFI failed to comply with effluent limitations in its Operating Permit as required by the Missouri Clean Water Law and the Missouri Clean Water Commission regulations. According to the NOV, samples of storm water collected from a creek located at the Landfill contained excessive concentrations of Tetrachloroethylene.

14. In its June 23, 2010 letter, Republic also informed Indian Harbor that it had discovered a "dense, heavier-than-water-substance in a creek leading from the Landfill, which has the visual appearance of a petroleum-related substance."

15. In a letter dated September 21, 2010, Republic advised Indian Harbor that it had received a Notice of Violation from the MDNR dated September 1, 2010. The letter stated that the NOV was potentially related to the discovery on June 16, 2010 of the dense non-aqueous phase liquid ("DNAPL") in the creek leading out of the Landfill.

16. In response to the NOVs and discovery of the DNAPL, Defendants monitored surface water for contaminants. In July 2010, Defendants installed upgrades to certain sumps and a trench at the Landfill and installed tanks to hold increased liquid evacuation from the sumps and trench.

17. After an investigation, it was determined that the design and installation of the groundwater interceptor trench wrongly assumed that the Winterset Limestone was the primary groundwater flow unit and that the Stark Shale was insufficiently impermeable to guard against vertical migration of groundwater. In essence, the pathway for the contaminants was deeper than the trench in place at the time.

18. Upon information and belief, Defendants have incurred, or expect to incur, several millions of dollars of expenses associated with the following efforts to reduce or eliminate DNAPL in groundwater and surface water: (1) response efforts, technical consulting, field investigation, and legal activities to respond to the DNAPL; (2) installation, operation and maintenance of a steam bank interceptor trench; (3) installation and maintenance of low permeability cover over the affected areas; (4) construction, operation and maintenance of a water treatment plant; and (5) disposal of contaminated soil as hazardous waste.

### The Taylor Payment

19.  On August 9, 2011, Republic informed Indian Harbor that it intended to purchase 52.5 acres of property owned by Harry and Linda Taylor. This property is adjacent to the Landfill. Republic claimed that the purchase was made "in settlement of any potential liability" to the Taylors.

20.  Indian Harbor informed Republic that it had insufficient information to consent to the purchase and requested additional information to determine whether the purchase would be covered by the Policy. Republic declined to produce this information and proceeded with the purchase on August 23, 2011. The total purchase price of $1,000,000 was broken down into three components: $682,500 for the purchase of the land; $34,000 for the purchase of livestock; and $283,500 for a release of any claims against Republic and BFI.

### THE INSURANCE POLICY

21.  Indian Harbor issued Pollution and Remediation Legal Liability Policy No. PEC002351502 to Republic for the period June 30, 2009 to June 30, 2010 (the "Policy"). A full and complete copy of the Policy is attached hereto as Exhibit A.

22.  The Insuring Agreement for Coverage A of the Policy states:

#### Coverage A – POLLUTION LEGAL LIABILITY

The Company will pay on behalf of the INSURED for LOSS and related LEGAL EXPENSE resulting from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION, which the INSURED has or will become legally obligated to pay as a result of a CLAIM first made against the INSURED during the POLICY PERIOD and reported to the Company, in writing, by the INSURED, during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD.

23.  "Loss" is defined by the Policy as follows:

**LOSS** means monetary judgment, award or settlement of compensatory damages as well as related punitive, exemplary or multiplied damages where insurance coverage is allowable by law arising from

  a. BODILY INJURY; and/or

  b. PROPERTY DAMAGE.

24. Coverage B of the Policy states:

  **B. Coverage B. – REMEDIATION LEGAL LIABILITY**

  The company will pay on behalf of the INSURED for REMEDIATION EXPENSE and related LEGAL EXPENSE resulting from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION:

  1. for a CLAIM first made against the INSURED during the POLICY PERIOD which the INSURED has or will become legally obligated to pay, or

  2. that is first discovered during the POLICY PERIOD provided that the INSURED reports such CLAIM or POLLUTION CONDITION to the Company, in writing, during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD.

25. "Remediation Expense" is defined by the Policy as

  T. **REMEDIATION EXPENSE** means expenses caused by a POLLUTION CONDITION and incurred to investigate, assess, remove, dispose of, abate, contain, treat or neutralize a POLLUTION CONDITION, to the extent required by:

  1. Federal, State, Local or Provincial Laws, Regulation or Statutes, or any subsequent amendments thereof, or MOLD MATTER REMEDIATION STANDARDS enacted to address a POLLUTION CONDITION, including any individual or entity acting under the authority thereof; and/or:

  2. a legally executed state voluntary program governing the cleanup of a POLLUTION CONDITION.

  REMEDIATION EXPENSE shall also include any associated (i) monitoring and testing costs, (ii) punitive, exemplary or multiplied damages, where insurable by law, or (iii) fines, penalties or assessments, where insurable by law. REMEDIATION EXPENSE shall also include RESTORATION COSTS.

## COUNT I – DECLARATORY RELIEF
## (EXCLUSION FOR CLOSURE/POST-CLOSURE COSTS)

26. Indian Harbor repeats and incorporates by reference herein the allegations of Paragraphs 1 through 25 of this Complaint.

27. Endorsement No. 35 to the Policy excludes coverage for Closure and Post-Closure costs, as follows:

> Section IV., EXCLUSIONS is amended by the addition of the following:
>
> Based upon or arising out of the following:
>
> \* \* \*
>
> 2) Closure and Post-Closure costs

28. The Landfill closed and stopped operating in September 1983.

29. All of the expenses for which Defendants seek reimbursement were incurred after September 1983. Some or all of these expenses incurred by Defendants, including but not limited to expenses allegedly incurred to remediate the issues related to DNAPL, constitute Post-Closure costs that are excluded by the Policy.

30. To the extent the expenses incurred by Defendants at the Landfill are determined to constitute Post-Closure costs, they are not covered by the Policy and Indian Harbor has no duty to indemnify Defendants for such costs.

WHEREFORE Plaintiff, Indian Harbor Insurance Company, respectfully requests that this Court enter a judgment:

(a) declaring that Indian Harbor has no obligation to indemnify Defendants for expenses which are determined to be Closure or Post-Closure costs;

(b) awarding Indian Harbor its attorneys' fees, costs, and disbursements in prosecuting this action; and

(c) awarding all other and further relief as this Court deems just and proper.

7

## COUNT II – DECLARATORY RELIEF
## (EXCLUSION FOR CAPITAL IMPROVEMENTS)

31. Indian Harbor repeats and incorporates by reference herein the allegations of Paragraphs 1 through 30 of this Complaint.

32. Endorsement No. 35 to the Policy excludes coverage for capital improvement costs, as follows:

Section IV., EXCLUSIONS is amended by the addition of the following:

Based upon or arising out of the following:

\* \* \*

1) Capital improvement costs

\* \* \*

33. Some or all of the expenses incurred by Defendants, including but not limited to expenses allegedly incurred or to be incurred related to the construction of a stream bank interceptor trench and a water treatment plant, constitute capital improvement costs that are excluded by the Policy.

34. To the extent the expenses incurred by Defendants at the Landfill are determined to constitute capital improvement costs, they are not covered by the Policy and Indian Harbor has no duty to indemnify Defendants for such costs.

WHEREFORE Plaintiff, Indian Harbor Insurance Company, respectfully requests that this Court enter a judgment:

(a) declaring that Indian Harbor has no obligation to indemnify Defendants for expenses which are determined to be capital improvement costs;

(b) awarding Indian Harbor its attorneys' fees, costs, and disbursements in prosecuting this action; and

(c) awarding all other and further relief as this Court deems just and proper.

## COUNT III – DECLARATORY RELIEF
## (EXCLUSION FOR OPERATION AND MAINTENANCE
## COSTS DUE TO NORMAL OPERATIONS)

35. Indian Harbor repeats and incorporates by reference herein the allegations of Paragraphs 1 through 34 of this Complaint.

36. Endorsement No. 35 to the Policy excludes coverage for Operation and Maintenance costs due to normal operations, as follows:

Section IV., EXCLUSIONS is amended by the addition of the following:

Based upon or arising out of the following:

\* \* \*

3) Operation and Maintenance costs due to normal operations

37. Some or all of the expenses incurred by Defendants, including but not limited to expenses allegedly incurred or expected to be incurred to operate and maintain the stream bank interceptor trench and the water treatment plant, constitute Operation and Maintenance costs due to normal operations that are excluded by the Policy.

38. Some or all of these expenses incurred by Defendants, including but not limited to expenses allegedly incurred to remediate the issues related to DNAPL, constitute Operation and Maintenance costs due to normal operations that are excluded by the Policy.

39. To the extent the expenses incurred by Defendants at the Landfill are determined to constitute Operation and Maintenance costs due to normal operations, they are not covered by the Policy and Indian Harbor has no duty to indemnify Defendants for such costs.

WHEREFORE Plaintiff, Indian Harbor Insurance Company, respectfully requests that this Court enter a judgment:

(a) declaring that Indian Harbor has no obligation to indemnify Defendants for expenses which are determined to be Operation and Maintenance costs;

(b) awarding Indian Harbor its attorneys' fees, costs, and disbursements in prosecuting this action; and

(c) awarding all other and further relief as this Court deems just and proper.

## COUNT IV – DECLARATORY RELIEF
## ( LANDFILL MATERIAL EXCLUSION)

40. Indian Harbor repeats and incorporates by reference herein the allegations of Paragraphs 1 through 39 of this Complaint.

41. The Policy contains a Landfill Material Exclusion that provides in relevant part:

This Policy does not apply to REMEDIATION EXPENSE or related LEGAL DEFENSE EXPENSE resulting from any POLLUTION CONDITION arising from or related to LANDFILL MATERIAL.

However, this EXCLUSION does not apply to:

1. only that portion of any POLLUTION CONDITION that have migrated beyond the boundary of all landfill cells at a location(s) stated in the Remediation Legal Liability Schedule; or

2. the removal of contaminated LANDFILL MATERIAL from within the boundary of a landfill cell at a location(s) stated in the COVERED LOCATION Schedule but only if and to the extent such contaminated LANDFILL MATERIAL: (a) exceeds applicable environmental standards; and (b) has been identified and established as the direct source of that portion of a POLLUTION CONDITION that has migrated beyond the boundary of all landfill cells at a location(s) stated in the COVERED LOCATION Schedule.

For purposes of this endorsement, LANDFILL MATERIAL means any waste or material deposited, disposed of, placed, or situated in any landfill cell at a location(s) stated in the COVERED LOCATION Schedule.

42. To the extent a "Pollution Condition" exists at the Landfill, that "Pollution Condition" likely arises from or is related to "Landfill Material," as that term is defined in the Policy. All expenses resulting from a "Pollution Condition" arising from or related to "Landfill Material," are excluded from coverage unless one of the two exceptions identified in the Landfill

Material Exclusion applies, and Indian Harbor has no duty to indemnify the Defendants for such expenses.

WHEREFORE Plaintiff, Indian Harbor Insurance Company, respectfully requests that this Court enter a judgment:

(a) declaring that Indian Harbor has no obligation to indemnify Defendants for expenses which are excluded pursuant to the Landfill Material Exclusion;

(b) awarding Indian Harbor its attorneys' fees, costs, and disbursements in prosecuting this action; and

(c) awarding all other and further relief as this Court deems just and proper.

### COUNT V – DECLARATORY RELIEF
### (COOPERATION AND CONSENT CONDITION PRECEDENT)

43. Indian Harbor repeats and incorporates by reference herein the allegations of Paragraphs 1 through 42 of this Complaint.

44. The Policy contains the following cooperation and consent condition precedent to coverage:

> As a condition precedent to the coverage hereunder, in the event any CLAIM is made against the INSURED for LOSS or REMEDIATION EXPENSE, or any POLLUTION CONDITION is first discovered by the INSURED that results in a LOSS or REMEDIATION EXPENSE:
>
> 1. The INSURED shall forward to the Company or to any of its authorized agents every demand, notice, summons, order or other process received by the INSURED or the INSURED's representative as soon as practicable; and
>
> 2. The INSURED shall provide to the Company, whether orally or in writing, notice of the particulars with respect to the time, place and circumstances thereof, along with the names and addresses of the injured and of available witnesses. In the event of oral notice, the INSURED agrees to furnish to the Company a written report as soon as practicable.

11

> It is further agreed, that the INSURED shall cooperate with the Company and upon the Company's request shall submit to examination by a representative of the Company, under oath if required, and shall attend hearings, depositions and trials and shall assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits, as well as in the investigation and/or defense thereof, all without charge to the Company. The INSURED shall further cooperate with the Company and do whatever is necessary to secure and effect any rights of indemnity, contribution or apportionment which the INSURED may have.
>
> * * *
>
> No costs, charges or expenses shall be incurred, nor payments made, obligations assumed or remediation commenced without the Company's written consent which shall not be unreasonably withheld. This provision does not apply to costs incurred by the INSURED on an emergency basis, where any delay on the part of the INSURED would cause injury to persons or damage to property, or increase significantly the cost of responding to any POLLUTION CONDITION. If such emergency occurs, the INSURED shall notify the Company immediately thereafter.

45. Defendants incurred charges and expenses, made payments, and assumed obligations related to the Missouri City Landfill without Indian Harbor's consent, either written or otherwise. None of these were incurred on an emergency basis. Therefore, a condition precedent of coverage has not been satisfied and coverage is unavailable for such charges, expenses, payments, and obligations.

46. Defendants have failed to cooperate with Indian Harbor as required by the cooperation and consent provision of the Policy. Among other things, and without limitation, Defendants have failed to provide information requested by Indian Harbor relating to the various expenses incurred at the Landfill and relating to the payment made to the Taylors.

47. The cooperation and consent provision of the Policy has not been fulfilled, and Indian Harbor has been prejudiced by Defendants' failure to comply with the said condition precedent.

WHEREFORE Plaintiff, Indian Harbor Insurance Company, respectfully requests that this Court enter a judgment:

(a) declaring that Indian Harbor has no obligation to indemnify Defendants for any costs, expenses or payments related to contamination at or from the Missouri City Landfill;

(b) awarding Indian Harbor its attorneys' fees, costs, and disbursements in prosecuting this action; and

(c) awarding all other and further relief as this Court deems just and proper.

## COUNT VI – DECLARATORY RELIEF
### (PAYMENT TO TAYLORS)

48. Indian Harbor repeats and incorporates by reference herein the allegations of Paragraphs 1 through 47 of this Complaint.

49. Pursuant to the Insuring Agreement for Coverage A, Indian Harbor is required to "pay on behalf of the INSURED for LOSS and related LEGAL EXPENSE resulting from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION, which the INSURED has or will become legally obligated to pay as a result of a CLAIM first made against the INSURED during the POLICY PERIOD and reported to the Company, in writing, by the INSURED, during the POLICY PERIOD …."

50. "Loss" is defined by the Policy to mean a "monetary judgment, award or settlement of compensatory damages as well as related punitive, exemplary or multiplied damages where insurance coverage is allowable by law arising from … BODILY INJURY; and/or … PROPERTY DAMAGE."

13

51.     Defendants have failed to provide information sufficient to determine that the payment to the Taylors was for a "Loss" as defined by the Policy. Specifically, Defendants have not demonstrated that the payment represented a settlement of damages arising from "Bodily Injury" or "Property Damage" as defined by the Policy.

WHEREFORE Plaintiff, Indian Harbor Insurance Company, respectfully requests that this Court enter a judgment:

(a) declaring that Indian Harbor has no obligation to indemnify Defendants for the payment made to the Taylors as set forth in Paragraph 20 herein;

(b) awarding Indian Harbor its attorneys' fees, costs, and disbursements in prosecuting this action; and

(c) awarding all other and further relief as this Court deems just and proper.

## COUNT VII – DECLARATORY RELIEF
## (NON-DISCLOSED CONDITIONS EXCLUSION)

52.     Indian Harbor repeats and incorporates by reference herein the allegations of Paragraphs 1 through 51 of this Complaint.

53.     The Policy contains a non-disclosed conditions exclusion that provides in relevant part as follows:

> This Policy does not apply to LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE or any other coverages afforded by endorsement attached to this Policy:
>
> * * *
>
> arising from any POLLUTION CONDITIONS existing prior to the inception date of this Policy, and reported to or known by a RESPONSIBLE INSURED, which was not disclosed in writing to the Company in the Application or related materials prior to the inception date of this Policy or prior to the locations stated in the Pollution Legal Liability and Remediation Legal Liability Schedule being endorsed onto this Policy. Any POLLUTION CONDITIONS disclosed in writing to the Company and not

otherwise excluded under this Policy is deemed to be first discovered on the date a location is endorsed onto this Policy.

54. To the extent a "Pollution Condition" exists at the Missouri City Landfill, that Pollution Condition existed prior to the inception date of the Policy, was reported or known by a Responsible Insured (as defined by the Policy), and was not adequately disclosed in writing to Indian Harbor in the Application or related materials prior to the inception date of the Policy.

55. Among other things, before issuance of the Policy, Defendants failed to adequately disclose to Indian Harbor the history of groundwater contamination at and beyond the boundary of the Landfill.

56. Therefore, the nondisclosed conditions exclusion bars coverage for the expenses for which Defendants seek reimbursement under the Policy.

WHEREFORE Plaintiff, Indian Harbor Insurance Company, respectfully requests that this Court enter a judgment:

(a) declaring that Indian Harbor has no obligation to indemnify Defendants for any costs, expenses or payments related to contamination at or from the Missouri City Landfill;

(b) awarding Indian Harbor its attorneys' fees, costs, and disbursements in prosecuting this action; and

(c) awarding all other and further relief as this Court deems just and proper.

## COUNT VII – DECLARATORY RELIEF
### (OTHER COVERAGE ISSUES)

57. Indian Harbor repeats and incorporates by reference herein the allegations of Paragraphs 1 through 56 of this Complaint.

58. Indian Harbor has no duty to defend or indemnify Defendants with respect to the claims made at the Landfill:

(a) to the extent that any of the expenses for which Defendants seek reimbursement fail to meet the definitions of "Loss," "Remediation Expense," or "Legal Expense;"

(b) to the extent that any LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE or any other coverages arose from any POLLUTION CONDITION that resulted from the intentional disregard of, or the deliberate, willful or dishonest non-compliance by a RESPONSIBLE INSURED with any statute, regulation, ordinance, order, notice letter or instruction from, by or on behalf of any governmental body or entity; or

(c) to the extent that the Defendants did not comply with the requirements related to Legal Counsel and defense costs pursuant to the Policy provisions, including but not limited to the language providing Indian Harbor with the right to designate legal counsel.

WHEREFORE Plaintiff, Indian Harbor Insurance Company, respectfully requests that this Court enter a judgment:

(a) declaring that Indian Harbor has no obligation to indemnify Defendants for any costs, expenses or payments related to contamination at or from the Missouri City Landfill;

(b) awarding Indian Harbor its attorneys' fees, costs, and disbursements in prosecuting this action; and

(c) awarding all other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Sean M. Sturdivan*

---
Sean M. Sturdivan          MO #56234
s.sturdivan@swrllp.com
SANDERS WARREN & RUSSELL LLP
9401 Indian Creek Pkwy, Suite 1250
Overland Park, KS 66210
Tele: 913-234-6100
Fax: 913-234-6199

and

Melisa G. Thompson, *pro hac vice admission pending*
mthompson@bcnlaw.com
Monica T. Sullivan, *prohac vice admission pending*
msullivan@bcnlaw.com
McRae M. Dobosh, *pro hac vice admission pending*
mdobosh@bcnlaw.com
Bates Carey Nicolaides, LLP
191 N. Wacker Drive, Suite 2400
Chicago, Illinois 60606
Phone: (312) 762-3260
Facsimile: (312) 762-3200

***ATTORNEYS FOR PLAINTIFF***